# STATE OF FLORIDA v. CARTER
## Case No. 84-9953A
Eleventh Judicial Circuit, Dade County

June 11, 1985

### APPEARANCES OF COUNSEL

**Kevin Foley,** State Attorney's Office, for plaintiff.

**Henry Carr, Milton M. Ferrell,** and **Mark King Leban** for defendant.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

This cause came before the Court on Defendant Peggy Carter's Motion for New Trial and Amended Motion for New Trial (hereinafter "motion") filed pursuant to Rule 3.600, Fla.R.Cr.P. The Court read

the transcript of the proceedings, heard extensive oral argument with respect to the matter, and also reviewed the very well drawn memoranda filed in behalf of each of the parties. Based on the foregoing, the Court makes the following findings and conclusions of law:

## I. Introduction

A. The Defendant directed her motion basically to the insufficiency of, and the weight of, the evidence. Additionally, the Defendant contends that the Court should not have permitted the case to be submitted to the jury, but rather, should have granted Defendant's motion for acquittal at the close of the State's case and, thereafter, at the close of all the evidence.

B. The Legislature of this State mandated by virtue of Chapter 893, Florida Statutes, and in particular Section 893.135(1)(b) that drug abuse must be prevented and controlled. To that end, the Legislature imposed a penalty based on the amount of cocaine involved of a mandatory minimum term of imprisonment which in this case is fifteen (15) calendar years and a fine of $250,000. That crime is a first degree felony known as "trafficking in cocaine."

C. Pursuant to her request, Defendant Carter was tried by a jury of her peers, and was found guilty of trafficking in cocaine. The Court deferred sentencing of the Defendant until disposition of this motion.

D. The Court is mindful of the laws of the State and of the abuses caused here by cocaine trafficking. However, it is the Court's duty to determine whether the evidence was sufficient to submit the case to the jury or to let the jury verdict stand in accordance with the legal standards contained in Chapter 893, Florida Statutes. Those standards are directed to whether Defendant Carter was "knowingly in actual or constructive possession" of the proscribed amount of cocaine. It has been stipulated as to the amount. In dispute, however, according to Defendant, is whether the Defendant was knowingly in actual or constructive possession of the cocaine.

E. This Court will not lightly overturn a jury verdict, especially since the jury system draws from the life experiences of the jurors in their individual and collective capacities. The jury is fundamental to our criminal justice system, and a jury decision should be given the presumption of correctness or validity whenever possible if it is in accordance with prevailing law as interpreted by our Courts.

F. It is not this Court's province to determine the credibility of the witnesses or to impose its will upon the jury except, perhaps, to avoid manifest injustice. Based on the jury's verdict here, the jury apparently

chose to believe the State's case and did not believe the Defendant's version of the facts. Accordingly, the facts will be related on that basis, i.e., in a light most favorable to the State. On those facts, the Court will on this motion examine and analyze the existing law as applicable to those facts.

## II. The Substantial Evidence

A. On April 26, 1984, the police set up a surveillance at a residence in Dade County believed to be a cocaine cutting house.

B. After approximately one hour and forty-five to fifty minutes into the surveillance, police observed three individuals exiting the rear of the residence, none of whom could then be specifically identified, but one of whom was carrying what later proved to be a large brown bag. The three persons went to the rear of a Toyota vehicle, later discovered to be registered in the name of Defendant Carter, and the person carrying the large brown paper bag placed it inside of the trunk of the automobile.

C. The same three individuals then drove away from the residence and were followed by the surveillance officers. The three individuals were never lost sight of from the time they exited the house until they were later arrested and it was established that they were at all times the same three who left the residence and got into the Toyota.

D. The surveillance officers caused a uniformed police unit to stop the Toyota which directed the three individuals to exit therefrom. The officers then removed the large brown paper bag from the truck and discovered in it the sum of $2,400 in cash and eight smaller brown paper bags each containing some 100 tinfoil packets of cocaine. Subsequent fingerprint analysis revealed one of Defendant Carter's fingerprints on the outside of two of the small brown paper bags.

E. The Toyota was a gift to Defendant Carter from her boyfriend Thomas Sharp, another named Defendant in the Information (whose occupation Defendant did not know) who on the night of the incident was the driver of the automobile. Defendant Carter was in the front passenger seat of the automobile and the third individual was in the rear seat of the car at the time of the arrest.*

F. Shortly thereafter, a search warrant was obtained for the residence, which search revealed a brown paper bag containing tinfoil

---

* The Court does not consider that charges were brought against all three individuals by way of the same Information or that the Defendant's boyfriend, Thomas Sharp, and the third person, Ulysses James, were either nolle prossed or dismissed for lack of a speedy trial. Defendant Carter was left "holding the bag."

packets of cocaine in the closet of the rear bedroom. In the kitchen, in open view, were found a tray and two plates containing a white powder later discovered to be cocaine and various other items associated only with cocaine and the "cutting" of that substance.

G. The evidence revealed that no one resided in the residence, the search revealed no "habitable" items in the house and that only an illicit operation was being conducted from those premises.

H. The three individuals, including Defendant Carter, had to pass through the kitchen when they exited the residence through the kitchen door and had to see the cocaine and associated items in plain and open view there.

## III. The Law

The Court reviewed dozens of cases relating to drug trafficking and contraband, including those relating to the difficult question of knowledge and actual or constructive possession.

Based on the facts adduced at trial as related above, the Court finds that the only reasonable inference arising from this evidence is that Defendant knew of the existence of the illicit cocaine operations while she was in the cocaine cutting house for a period of at least approximately two hours, and of its illicit nature. Of greater difficulty however, is whether Defendant had actual or constructive possession of the cocaine and whether that evidence is either sufficient to submit to the jury or insufficient as a matter of law to support a finding of guilt beyond a reasonable doubt.

Counsel for Defendant has eloquently made the contention that the cases which go to "actual or constructive possession" require that each fact standing alone be sufficient to show dominion or control of the cocaine to be in Defendant Carter. The Court, however, on this Motion, considers the "totality", of the evidence, rather than piecemeal. This situation is much like a painting: an unfinished tree, or a lake without water or a part of a mountain are meaningless by themselves to portray a complete scene. However, put them all together in a single presentation to a jury and they become a vivid picture of Defendant's participation in cocaine trafficking. As in most trials, evidence is presented piecemeal and one piece of evidence may be insignificant by itself; but, when they are all put together, the totality is more than its separate pieces.

The Court has reviewed in detail the cases urged upon it in behalf of Defendant, and candidly, the Court is troubled by those cases. However, for the reasons hereinafter set forth, the Court will not overturn the jury's verdict in this case.

The Defendant cites *Kuhn v. State*, 439 So.2d 291 (Fla. 3rd DCA 1983) to the effect that State must prove ability to exercise dominion and control over the contraband; *Johnson v. State*, 456 So.2d 923 (Fla. 3rd DCA 1984) to the effect that evidence must go beyond showing that Defendant was in close proximity to the contraband discovered in the residence and mere proximity to contraband without more is legally insufficient to prove possession; *Diaz v. State*, FLW May 2, 1985 (Fla. 3rd DCA 1985) at p. 1046 must show relationship with owner or renter of premises where contraband found and Defendant's mere proximity to the contraband without more was legally insufficient to prove possession; *Arant v. State*, 256 So.2d 515 (Fla. 1st DCA 1972) where potato chip can on which Defendant's fingerprint was found was insufficient as to when the fingerprint was placed there, i.e. before marijuana was put into the can or subsequent thereto (case goes to knowledge, not possession); *Kresbach v. State*, 462 So.2d 62 (Fla. 1st DCA 1984) no evidence as to when fingerprint was put on envelope as going to knowledge and control of the contraband; *Tanksley v. State*, 332 So.2d 76 (Fla. 2d DCA 1976) fingerprint expert could not testify as to length of time print had been on the envelope was insufficient to indicate requisite possession of the drugs; *Green v. State*, 460 So.2d 986 (Fla. 4th DCA 1984) Defendant's presence in the room with the cocaine in plain view indicated knowledge of the illicit nature of the contraband, but did not show that Defendant had the ability to exercise dominion and control over the cocaine; *Pena v. State*, 10 FLW 831 (Fla. 2d DCA 1985) mere proximity to contraband in a car in which defendant had joint possession does not establish his constructive possession of the drugs; *Mancarella v. State*, 445 So.2d 713 (Fla. 3rd DCA 1984) where defendant went outside to check the money with respect to the drug transaction, but since the cocaine was not in sight but above a dropped ceiling, the case does not sustain a verdict of guilty of trafficking by possession; *Kickasola v. State*, 405 So.2d 200 (Fla. 3rd DCA 1981) defendant's offer to sell methaqualudes was too ambiguous to reflect dominion and control over the contraband; *A.S. v. State*, 460 So.2d 564 (Fla. 3rd DCA 1984) cocaine hidden inside a roll of toilet paper in the glove compartment of defendant's sister's car which defendant was driving was insufficient to allow a jury to find him guilty of the offense charged and that appellant's ownership of the vehicle would not have cured that defect.

On the other hand, the State submitted a number of cases which, based on the totality of evidence, appears to this Court to be more persuasive as to the issue before it with respect to the granting of a new trial. In *Heiney v. State*, 447 So.2d 210 (Fla. 1984), the Supreme Court stated:

"The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial competent evidence to support the jury verdict, we will not reverse a judgment based upon a verdict returned by the jury." (at p. 212)

See also *Maisler v. State*, 425 So.2d 107 (Fla. 1st DCA 1982), which cites with approval *Amato v. State*, 296 So.2d 609 (Fla. 3rd DCA 1974):

"[T]he test to be applied on a review of a denial of a motion for judgment of acquittal is not whether, in the opinion of the trial court or the appellate court, the evidence fails to exclude every reasonable hypotheses but that of guilt but, rather, whether the jury might reasonably so conclude. Vick v. United States, 216 F.2d 228 (5th Cir. 1954). The jury is the pivotal point at which evidence is aimed, not the courts." (at p. 109)

Both cases are to the effect that constructive possession was a question of fact properly submitted to the jury. *Brown v. State*, 428 So.2d 250 (Fla. 1983) the knowledge element is met when contraband is in plain view in common areas, and the dominion and control element is met when defendant as resident owner of his home had control over the common areas; *Armbruster v. State*, 453 So.2d 833 (Fla. 4th DCA 1984) possession of contraband may be in joint constructive possession of eight persons when circumstantial evidence shows defendants' knowledge of marijuana in the house where defendants were sleeping fully clothed on the floor of two rooms in which 265 bales of marijuana and other indicia of illicit operations existed, without proving actual physical possession by any one defendant; *Chappell v. State*, 457 So.2d 1133 (Fla. 1st DCA 1984) which cites with approval *Brown v. State*, 428 So.2d 250 (Fla. 1983) to the effect that joint occupancy with or without ownership of the premises where contraband is discovered in plain view in the presence of the occupant is sufficient to support a conviction for constructive possession; *U.S. v. Rackley*, 724 F.2d 1463 (CA 11 1984) neither defendant did have dominion and control over the pickup truck which was registered in his name; hence, that defendant's presence at the site coupled with his dominion and control over the truck where large quantities of cocaine were found was sufficient to sustain the conviction of possession of a controlled substance with intent to distribute; and *H.D. v. State*, 348 So.2d 1159 (Fla. 3rd DCA 1976) to the effect that when persons combine to commit an unlawful act, each is criminally responsible for the acts of his associates and an accomplice will be held to answer even though he himself did not commit the act.

109

## IV. Conclusion

Without being unduly naive, Defendant's presence for a period of almost two hours in a house which is not humanly habitable and which is usable for the sole purpose of "cutting" and packaging cocaine, leads to two inescapable conclusions: Defendant was not playing tiddlywinks while in the cocaine cutting house, and Defendant was involved knee-deep in illicit cocaine. As such, Defendant Carter had the requisite knowledge and was in actual or constructive possession of cocaine as proscribed by Section 893.135(1)(b), Florida Statutes.

Accordingly, the Defendant's motion for a new trial is denied in all respects, and the Court will sentence the Defendant in accordance with Section 893.135, Florida Statutes, at a time convenient for all concerned.